Good morning, Your Honors. My name is Evelyn Zenneimer. I'm here on behalf of the petitioner Cesar M. Lopez. In this case, the petitioner asserts that the harm he suffered at the hands of the guerrillas rose to the level of persecution. He also asserts that his persecution is on account of his political opinion, in that he was a member of the Civil Patrol from 1987 through 1991, the year he fled from Guatemala, and he served as the government's informer about the whereabouts of the guerrillas in the mountain areas of La Paz and San Pablo. In 1988, the guerrillas came to his place of employment. He worked there as a storekeeper for the coffee plantation. The guerrillas tied him up, locked him in the warehouse, and set the warehouse on fire. Had it not been for the neighbors who heard his cries for help, he would have been burned because he couldn't get out from the warehouse. And even though he did not seek medical treatment, but allowed his family members to take care of him, it didn't mean that the injuries he sustained from the burning incident were not serious. Why can't he go back to Guatemala now because the conditions in the country have improved so much? Even though the conditions have improved so much, he still fears a return to Guatemala because some of the guerrillas are now part of the government, and he fears reprisal that the ex-combatants would come after him. This was evident after three years when he left Guatemala. The guerrillas attempted to kidnap the children with firearms, and they were shot at. Even though the guardian for the children filed the incident before the court until this day, that case was never heard. I have a question for you. What evidence in the record would show that what the guerrillas did to him when they put him in the warehouse and set it on fire was on account of one of the so-called protected grounds, on account of political opinion or membership in a particular social group or whatever your theory for asylum is? And I raise that because, as I understood it, the immigration judge and the BIA have basically said that it wasn't shown that the damage to his relatives or to him was on account of a protected ground. And then we review for substantial, whether their conclusion is supported by substantial evidence. So the problem I'm having with the case, and why I want you to focus on that issue, is that it seems to me our law would say that unless the record compels the conclusion that he was persecuted on a protected ground, then we can't reverse what the agency does. So what shows this connection? As stated in his asylum application form I-589, he indicated there that he was a member of a guerrilla. In his testimony, he also said that he enlisted in the Army, but he was not active. When he, his duties as a civil patrol member was to act as the government informer against the guerrillas, the whereabouts of the guerrillas. And there were weekly visits. The guerrillas tried to recruit him, but he, in his application and in his in-court testimony, said that he would never go against his fatherland, meaning Guatemala. He also has, his family is politically active, meaning that there were evidence submitted that were not challenged by the government of membership of his family to the Guatemalan Army. So the whole family were viewed as that their political beliefs were aligned with the government. And also, the mother-in-law, when they were married, the mother-in-law, sister-in-law, and brother-in-law, they all live in one household. They were also massacred by the guerrillas for refusing to join them or assist them. That happened in December 1982. So that, the only logical inference is that because the activities and the beliefs of the petitioner and his entire family were aligned with the government, it would only show that the guerrillas' persecution on the Okay, thank you. There was another issue that was of concern to me that I hoped at some point you'd address in your argument, and that's the Convention Against Torture, the request for relief under that. I didn't see any place in the agency's decision where they dealt with a, I'll call it a CAT claim, Convention Against Torture claim specifically. And I don't know if I'm pronouncing it right, but it's something like Kalmathus said that that issue needs an individual treatment apart from asylum discussion. That's correct, Your Honor. In the Convention Against Torture, Article 3 of the Hague Convention, one of the requirements is that the persecutor must be the government or a person authorized by the government, or that the government is unwilling to control the acts of that person. In other words, the government authorized the person to act that way, and also that the persecution must be severe so that it is very atrocious, and it has to apply to the individual situation of the petitioner. The reason why we address the relief under the Convention Against Torture is because the guerrillas are now part of the present government. And at that time, the government is not willing or not able to control the actions, the extrajudicial killings of the authorities. I don't know, the 1998 country reports condition indicates that extrajudicial killings continue, and that the government, even though they try to persecute or prosecute these people that are involved in these extrajudicial killings, there were just a lot of corruptions. Judges were intimidated, witnesses were intimidated, and sometimes the prosecution or the judicial process is very slow. If the government, if it can't be shown the government's unwilling to protect a person, but if the government's unable to protect someone, just that events are not within their control, what's the result then under the law? Excuse me, Your Honor. What's the result then? In other words, can a person get the Convention Against Torture relief if the government is unable to control somebody else? Does it have to be just the government's unwilling to do it? Like, your theory is the guerrillas are part of the government. That's correct. And I understand that. If the record shows that, you know, that would be straightforward. Assuming that the guerrillas aren't part of the government, but yet guerrillas are still active in a country, and the government's unable to control them, can there be relief under CAT, or is it only relief if the government is acting? I would think it would be both, Your Honor. The purpose of the Convention Against Torture Act is to protect those who cannot protect themselves. If the government is unwilling or not able to control, it should not matter at the end, because the spirit of the act itself is to protect those that cannot protect themselves. May I ask a question with respect to the Convention Against Torture? I was unable to find that that issue was raised before the IJ or the BIA. We raised it before the board, Your Honor, but it wasn't addressed by the board. It was raised before the board. It was raised before the board, but it was never addressed in their decision. And how did you raise that? In your application? No, in the brief, Your Honor. In the appellate brief, yes. All right. Thank you very much. Thank you very much, ma'am. You're welcome. Let me see. Would you identify yourself for the record, please? May it please the Court, I am Joshua Braunstein for the Attorney General. I'm concerned about the two issues that I raised in my questioning. One, the state of the evidence on whether some of these very disturbing acts, the burning, the other family members' problems or torture, whether those are on account of a political opinion or membership in a particular social group and what the government's view is on that. The second thing I'm concerned about, and you can address them at any time in your argument, is that as I read the BIA decision, it just did not address the Convention Against Torture claim at all. It didn't have the words Convention Against Torture in their opinion. And I'm really having trouble seeing how, if the BIA doesn't mention the Convention Against Torture under the most liberal standard of what that Cal Mathis case means, we could possibly do anything other than remand on that. So you can address those at any point in your argument, but those are the two points on my mind. Your Honor, I'll take them in order. The first, with respect to the on account of prong, our position is that the evidence in this case is quite a long way from compelling the conclusion that the guerrilla's interest in Mr. Lopez was for any other reason than that they wanted him to join their ranks and assisting them in this, in their struggle, whatever it may have been, ostensibly against the government that was at the time leading Guatemala. You wanted him to join their ranks and that's why they tied him up and put him in a burning building? No, Your Honor. That incident, which is the focal point of the Petitioner's persecution claim, with respect to that incident, there is no evidence that it was done for any other reason than to intimidate, to seek to appropriate or expropriate the land that was owned by a wealthy coffee plantation owner. And the evidence that supports that it was at best a harassment campaign is in both his asylum application. The asylum application, he talks about how, and I'll quote, and this is the record at 153, extremists came into the storehouse and tried to steal everything. There's no mention in the application about the extremists persecuting him on account of any reason. It seems that they came in and did terrible things to him and to the plantation and the storehouse that was located there. The White House indicated at the administrative record, 153, 154, that he claimed that he was persecuted by leftist extremists. Leftist, yes, Your Honor. On account of his political opinion and social group. Well, Your Honor, those are, Your Honor, the buzzwords without more, without specific and credible evidence do not give him that required on account of. He says I was persecuted over and over. And the mere fact that he was found credible. What about the statements by the leftist extremist guerrillas that he was defending rich landowners and should not do so and should go with them against the rich landowners? That's what he claims. Well, I. And he was found to be credible. No, I agree, Your Honor. But I think what the, what I'm reading on page. Persecuting me saying that I shouldn't be working for rich people, that I should help the guerrillas to get everything away from the rich people I was working for. Isn't that, at least in the dialectic of the Marxist leftist extremists, a political opinion? Well, Your Honor, he has never made that claim. His claim has been that he was persecuted because of his activities as a member of the civil patrol, which would be not as his activities as an employee of a coffee plantation. And there's no allegation that that coffee plantation was run by the government. In fact, it appears that that plantation had strategic importance to both sides, both the guerrillas and the government. And he testified that there were recruitment meetings. And it's not clear who held those meetings. It may have been both. But in the record at page 71, it's clear that he says that both the army and the guerrillas used that plantation. He says, the question, the guerrillas used the plantation or the army used the plantation? Answer, the guerrillas would come or the, and the army would come. And then he says, okay, what were they doing on the plantation? They, ostensibly both, would come to do their meetings with the people. And then he answers, the guerrillas would say to them that they needed their cooperation. They didn't want us to work for wealthy people, as you noted, Judge Bee. That's a political opinion in the context of civil wars. Well, I don't agree that that, the record, that that evidence compels the conclusion that it was a political opinion imputed to him. On this dialectic, a class struggle, working for wealthy exploiters is not a political opinion? Well, once again, Your Honor, I would submit that the board was free to find, and they may have found that, indeed, that plantation, that the only thing was that they wanted that plantation from which to gain wealth. And it had other strategic importance. Evidently, it was a meeting place. And so there is no connection, there's no nexus between him working there, other than that one statement, which is don't work for the rich people. And his claim has never been. I'm sorry, Your Honor. Well, I somewhat shared Judge Bea's concern on this. Judge Bea. I realize that you're arguing that, okay, that may be evidence the board could have credited, but it doesn't compel the conclusion that the on account of ground is satisfied. But what about the fact, if I have this right, that his father was abducted, that his sister was detained by guerrillas, that his sister was tortured? You know, there's a lot of evidence that makes this look like we should credit the petitioner's argument that his family was kind of on the outs politically with the guerrillas. Well, I think he had the burden, Your Honor, of pulling that together. And if you look at the record, it indicates that these were various and unrelated acts by, we can, I suppose, the evidence shows that it may have been, it was guerrillas. I don't know if it says it's the same. What happened to his sister? His sister wasn't persecuted by guerrillas, Your Honor. His claim is his sister was taken by the army, the other side. So that can't possibly undergird his position. It does nothing for his position. All it shows is that there was violence on both sides, that people were being maltreated. But that's not a claim that guerrillas hurt his sister. Pardon? What's the record about his father? His father, he says, was kidnapped. This is in 1979, Your Honor. That is nine years before he has any run-ins with them. And his father was, at that time, according to the record, he was the administrator of this plantation. And he says that his father was beaten up, quote, because he did not want to cooperate with them, end of quote. And that's record at 69. What's the answer to the question Judge Gould asked at the beginning about why the BIA didn't talk about the Convention Against Torture claim? Well, I can't say what their reason was, but I can say this. I'm sorry. But what do we do about it? You don't have an answer? My answer is no, Your Honor. We do not. And what's your legal position? My position is that the petitioner has not raised even a prima facie torture convention claim because even under his best coloring of the evidence, he has never alleged that the government ever knew about the incidents at that plantation. And since the government was not acting, the regulations. But doesn't the BIA have to say that? I mean, they appear to have ignored it. They have not. I cannot say that they have addressed it, Your Honor. And if it's. If they haven't addressed it, why doesn't the government just come in and say, oh, we made a mistake. They didn't address it. So we should send it back to have them address it. Well, if that. At a minimum, I'm just asking how the government. You know, when we have a legal precedent that says not only do they have to address it, but they have to address it in some way that shows that they're taking into account the different standards for CAT and for asylum. So we've got that law out there. And then we have an opinion of the agency where they just don't even mention the words when the issue was raised. It seems to me the government ought to be looking towards telling their client you have to address this. Well, I will. I will. I will say this, Your Honor. If under this law, this court's precedent, that the court finds that the board had to mention this claim, even though there was not. Have you read our precedent? I have to confess, Your Honor, it's not in our brief. And I'm not entirely familiar with it. And that's the only reason I've not mentioned it. Maybe you should take a look at Talmadge. Do you have anyone here know the site to it? Hold on a second. Yeah, I've got it here. Well, Your Honor, this case. Maybe you should take a look at it after the argument. It's 251-Fed 3rd-1279. 251-Fed 3rd-1279. And if the government wants to submit a supplemental memo that either says we agree there was error and what we should do about it or wants to distinguish the case or argue something that we shouldn't apply it or urge that it go in bank, you know, that's fine. But you need to address that case. Very well, Your Honor. Okay. Thank you. Your time is up. Thank you. Ma'am, you've used your time, so we will submit this case at this time. Thank you. Okay. If the government – can we just say informally or do we need to issue an order, do you think? To ask the government to address that issue. I don't think we need an order, do we? I don't. So if the government does address it, then the petitioner could also respond. No, that would be a form of brief. Why don't we just say within the next – by a week from today, either side may file a letter brief by a week from today. Very well. Okay, on the Comas case issue. Thank you. Thank you.
judges: Silverman, Gould, Bea